IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

TERESA PENCE,                )     CASE NO. 1:13-CV-287
                                )
          Plaintiff,    )     JUDGE JOHN R. ADAMS
v.                      )
                                )     MAGISTRATE JUDGE
                                )     KENNETH S. McHARGH
                                )
COMMISSIONER OF SOCIAL    )
SECURITY ADMINISTRATION,    )     **REPORT & RECOMMENDATION**
                                )
          Defendant.    )

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Teresa Pence's ("Plaintiff" or "Pence") applications for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance benefits and Supplemental Security Income benefits around April 28, 2009. (Tr. 15, 155-58, 159-61). Pence alleged she became disabled on February 1, 2004, due to suffering from depression, high blood pressure, and neck arthritis. (Tr. 153-61, 171-73, 183). The Social Security Administration denied Plaintiff's applications on initial review and upon reconsideration. (Tr. 103-06, 109-14).

1

At Pence's request, an administrative law judge ("ALJ") convened an administrative hearing on May 18, 2011 to evaluate her applications. (Tr. 32-94, 116). Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE") also appeared and testified. (*Id.*). On August 1, 2011, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 15-24). After applying the five-step sequential analysis,[1] the ALJ determined Pence retained the ability to perform work existing in significant numbers in the national economy. (*Id.*). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 11). The Appeals Council denied her request for review, making the ALJ's August 1, 2011 determination the final decision of the Commissioner. (Tr. 1-3). Pence now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

## II. EVIDENCE

### A.  Personal and Vocational Evidence

Pence was born on May 11, 1962, and was 49-years-old on the date of her hearing before the ALJ. (Tr. 41, 95).  Accordingly, she was considered a "younger person" for Social Security purposes.  *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).  Pence earned her GED and had past relevant work as a screen printer.  (Tr. 45, 84).

### B.  Medical Evidence[2]

On August 18, 2006, Pence presented to Amherst Hospital with complaints of left side neck pain radiating into her left arm and left shoulder. (Tr. 355).   Films of her cervical spine revealed moderate degenerative changes in the mid and lower cervical spine, but were otherwise negative. (Tr. 357).  Plaintiff underwent physical therapy from September 25, 2006 to October 5, 2006, attending a total of three sessions. (Tr. 351).   Upon discharge, her physical therapist indicated that Pence was progressing and she reported decreased radiating pain down her left upper extremity overall.  Plaintiff was given a home traction unit. (*Id.*).

Pence treated with Parshotam Gupta, M.D., of Neurosurgical Services, Inc., on March 30, 2007, who served as one of her back specialists. (Tr. 396).  She reported having surgery on her neck nine years prior.  Pence also complained of neck pain, numbness in the last two fingers of her left hand, and that neck traction was not easing her pain. (*Id.*).  According to Dr. Gupta, an MRI indicated "extensive degenerative disc disease at C5-C6, C6-C7, C7-T1 mainly on the left side" and "a herniated disk which is more . . . prominent on the right side at C3-C4, it may not be causing any problem or the pain is not because of that, mainly the pain is coming from C5-C6,

---

[2] The following recital of Plaintiff's medical record is an overview of the medical evidence pertinent to Plaintiff's appeal.  It is not intended to reflect all of the medical evidence of record.  Plaintiff challenged only the ALJ's evaluation of her physical impairments, therefore, the Court's discussion is limited to that portion of the medical record.

3

C6-C7, C7-T1." (Tr. 397).  Dr. Gupta diagnosed cervical spondylosis. (*Id.*).  On April 17, 2007, Sanjay Kumar, D.O., also of Neurosurgical Services, Inc.,[3] performed a physical examination which showed a reduced range of motion in Plaintiff's neck with left rotation and extension. (Tr. 405).  Dr. Kumar then conducted an electro diagnostic evaluation that revealed mild radiculopathy predominantly at C7 and C8 and very mild left ulnar mononeuropathy localized to the elbow. (*Id.*).  Dr. Kumar recommended an epidural injection. (Tr. 406).

On October 26, 2007, Pence sought treatment at "The Hospital for Orthopaedic & Specialty Services" following a falling injury on stairs. (Tr. 340).  Images of Plaintiff's spine revealed no fractures. (Tr. 341-44).  The cervical spine showed mild degenerative disc disease with a narrowing of the C5-C6 and C6-C7 disk spaces. (Tr. 343).  An image of the lumbar spine showed some mild degenerative changes and minimal narrowing of the L5-S1 disk space, without significant spondyloisthesis or spondylolysis. (Tr. 344).

On February 27, 2008, Plaintiff treated with Dr. Kumar. (Tr. 388).  She reported that a prior cervical epidural helped to relieve her pain. (*Id.*).  Dr. Kumar diagnosed cervical spondylosis with degenerative disc disease and recommended Vicodin. (*Id.*).  He noted strength somewhat decreased in the left grip as compared to the right, decreased range of motion in the neck in all directions, and a normal gait. (*Id.*).  On July 14, 2008, Pence reported to Dr. Gupta that she was experiencing low back pain, which comes on every six months and then stops after about three weeks. (Tr. 384).  She also complained of non-radiating neck pain. (*Id.*).

In September and October of 2008, Plaintiff treated with her primary care physician, Wayne Brabender, M.D. (Tr. 593-94). Dr. Brabender noted high blood pressure, hypertension, and chronic cigarette use. (*Id.*).

---

[3] The ALJ refers to Dr. Gupta and Dr. Kumar as practicing at "NeuroSpineCare, Inc.," which is what appears to be the name the two practitioners changed their practice to at a later date.

4

In September 2008, Dr. Gupta noted that Plaintiff reported jumping off of a diving board, which caused a sprain in her lower back and chronic pain. (Tr. 382).  On November 18, 2008, Dr. Gupta performed a physical examination which revealed lumbar spine range of motion decreased in all directions with some pain. (Tr. 380).  However, the doctor found no muscle spasms, strength was 5/5 in the upper and lower extremities, reflexes were normal, and straight leg raises were negative. (*Id.*).  In the cervical spine, Dr. Gupta noted tenderness on the left side with mild spasm of the trapezius muscle and some limited range of motion. (*Id.*).

On February 2, 2009, Gary Hinzman, M.D., a state agency medical consultant, conducted a review of Plaintiff's medical records and rendered an opinion. (Tr. 446-53).  Dr. Hinzman opined that Plaintiff was capable of lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, standing or walking for six hours in an eight-hour day, and sitting for six hours. (Tr. 447).  Plaintiff was unlimited in pushing and pulling, but limited to occasional reaching overhead due to decreased range of motion and radiculopathy at C7-C8. (Tr. 447, 449).

Also in February 2009, Plaintiff treated with Dr. Brabender after Dr. Gupta referred her for a consultation due to high blood pressure and tachycardia. (Tr. 457).  Upon examination, Dr. Brabender noted no significant findings. (*Id.*).  On March 31, 2009, Dr. Brabender indicated that Plaintiff's tachycardia was resolved and she had stopped smoking cigarettes. (Tr. 455).

An MRI performed on June 5, 2009 indicated degenerative disc disease at L5-S1, with a disc protrusion touching the left S1 nerve root, which correlated with radiculopathy. (Tr. 476).  Mild, multilevel facet arthrosis was also present. (*Id.*).  Pence treated with Dr. Gupta on June 30, 2009. (Tr. 494).  Plaintiff indicated that sitting to standing was difficult and increased her pain. (*Id.*).  She also stated that her pain medication helped and her sleep was good. (*Id.*).  A physical examination showed some tenderness and limited extension, bilateral rotation, and right flexion,

but Dr. Gupta opined that the "rest of the range of motion is pretty well preserved and pain-free. Strength is 5/5 in the upper and lower extremities.  Reflexes are normal.  Straight leg raising is negative." (*Id.*).  Plaintiff's treatment included Percocet and a facet joint block. (*Id.*).

On November 28, 2009, Ralph Graham, M.D., another state agency consultant, reviewed Plaintiff's record. (Tr. 530-38).  In terms of lifting, carrying, standing, walking, sitting, pushing/pulling, and reaching overhead, Dr. Graham imposed the same limitations as Dr. Hinzman. (Tr. 531-33).

From February 20, 2010 to February 23, 2010, Pence underwent hospitalization after an overdose of Xanax and was diagnosed with acute bronchitis and dehydration. (Tr. 754).  On June 12, 2010, Walter Holbrook, M.D., rendered a third state agency opinion. (Tr. 714).  When conducting a review of the medical record, Dr. Holbrook accounted for the February 2010 emergency room visit. (*Id.*). Dr. Holbrook concluded that Pence's RFC remained unchanged since Dr. Graham's opinion. (*Id.*).

On July 5, 2010, Dr. Gupta's physical examination revealed that Pence's range of motion in her lumbar spine was well preserved and pain free. (Tr. 718).  Dr. Gupta found tenderness in the lower part of the cervical spine and a decreased range of motion with mild pain. (*Id.*). Otherwise, Plaintiff's strength and reflexes were normal and straight leg raises were negative. (*Id.*).   In August 2010, Plaintiff reported low back pain, left hamstring pain, and non-radiating neck pain. (Tr. 720).  Dr. Gupta found some decreased range of motion, but normal strength, reflexes, and a negative straight leg raise. (*Id.*)  He prescribed Percocet and a cervical epidural block. (*Id.*).   During September 2010, Plaintiff voiced complaints about her low back and hamstring, but noted that the cervical block eased her pain.  (Tr. 737).  A physical examination showed a relatively well preserved and pain free range of motion except left rotation in the

lumbar spine, normal strength, normal reflexes, negative straight leg raising, and a pain free and well preserved range of motion in the cervical spine.  (*Id.*).

The record contains approximately eight examination records from Dr. Brabender from January 2010 to March 2011.  In January 2010, the doctor noted that Pence had chronic tachycardia, chronic obstructive pulmonary disease ("COPD"), asthma, and was treating with Dr. Gupta for chronic pain management. (Tr. 722).  In November 2010, Dr. Brabender indicated a CAT scan suggested an arteriovenous ("AV") malformation in the right cerebral cortex (Tr. 725).  Plaintiff was hospitalized from November 11, 2010 to November 13, 2010 due to psychosis and ataxia, which health care providers opined was likely secondary to Xanax abuse. (Tr. 756-57).  During December 2010, Plaintiff complained of headaches, and Dr. Brabender noted a recent diagnosis of diabetes. (Tr. 726).  Pence agreed to see a neurologist upon Dr. Brabender's recommendation. (*Id.*).

On January 14, 2011, Plaintiff treated with neurologist Darshan Mahajan, M.D. (Tr. 819-21).  Pence complained of balance issues, headaches, and falls. (Tr. 819).  The doctor wrote that an MRI and CT scan of the brain were suggestive of small vessel disease and AV malformation. (Tr. 819).  A neurological examination revealed a normal gait, normal muscle tone and mass, normal power in all muscle groups, and decreased sensation below the knees and elbows bilaterally. (Tr. 821).  Dr. Mahajan recommended a repeat MRI of the brain to examine the arteriovenous structure and requested physical therapy. (Tr. 822).

On February 11, 2011, Dr. Brabender diagnosed migraine headaches, diabetes mellitus, and hypertension. (Tr. 727).  An office note dated February 16, 2011 indicates that Dr. Brabender called Plaintiff into his office for a physical examination so that he could complete her disability forms. (Tr. 728).  The physical examination showed no cartiod brutis in the neck,

regular heartbeat and rhythm with no galloped rhythms, decreased breath sounds in the lungs, and no leg edema.  Dr. Brabender wrote: "She is very limited as to what she can do.  She has a positive straight leg sign.  She cannot bend to touch her knees.  Patient cannot bend or twist.  She does not sit in 1 position for any length of time."  (*Id.*).

On April 29, 2011, Dr. Brabender completed a Physical Residual Functional Capacity Questionnaire. (Tr. 826-830).  The doctor clarified that the assessment covered his treatment of Pence from September 2007 to April 2011. (Tr. 825).  On the RFC form, Dr. Brabender relayed Plaintiff's diagnoses, which included diabetes mellitus, AV malformation, neuropathy of the feet and legs, hypertension, and headaches. (Tr. 826).  Plaintiff's symptoms included chronic neck pain, numbness and burning in her feet, chronic headaches, back pain, and sciatica. Regarding "clinical findings and objective signs" the doctor identified declined reflexes, inability to bend and twist, and difficulty lifting. (*Id.*).  In the portion of the form that discussed psychological conditions affecting the patient's condition, Dr. Brabender noted that Pence saw a psychiatrist and did not provide his opinion on her mental health. (*Id.*).  Regarding functional abilities, the doctor wrote that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations. (Tr. 827).  The doctor went on to opine that Pence could: sit continuously for thirty minutes; sit for less than a total of two hours in an eight-hour workday with normal breaks; stand continuously for ten minutes; stand/walk for less than two hours in an eight-hour workday; and lift and carry less than ten pounds occasionally. (Tr. 828-29).  He found Plaintiff had significant limitations in performing repetitive reaching. (Tr. 830).  Dr. Brabender recommended an at-will sit-stand option and two to three unscheduled breaks per hour. (Tr. 829). The doctor concluded that Pence would miss work more than four times per month.  (Tr. 830).

8

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.[4]

2. The claimant has not engaged in substantial gainful activity since February 1, 2004, the alleged onset date.

3. The claimant has the following severe impairments:  arthritis in the low back and neck, Type II diabetes with neuropathy, degenerative disc disease, obesity, and an arterial venous malformation.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that she can lift and carry ten pounds frequently and 20 pounds occasionally.  She can sit, stand and walk six hours out of an eight-hour workday with normal breaks.  She can climb ramps and stairs occasionally.  She can occasionally stoop, kneel, crouch and crawl.  She cannot climb ladders, ropes and scaffolds.

6. The claimant is capable of performing past relevant work as a screen printer.  This work does not require the performance of work related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2004, through the date of this decision.

(Tr. 17-23) (internal citations omitted).

### IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security

Income benefits only when she establishes disability within the meaning of the Social Security

Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform

---

[4] Plaintiff alleges the ALJ's assignment of a December 31, 2011 date last insured is not consistent with her earning records. (Pl. brief at 2 n.2).  Plaintiff does not specify what her date last insured ought to have been.  As a result, the Court will not further address the issue.

"substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

# VI. ANALYSIS

## A. Treating Physician

Plaintiff argues that the ALJ violated the treating physician rule with respect to Dr. Brabender, Plaintiff's general physician.  On April 29, 2011, Dr. Brabender completed a treating source statement providing his opinions on Plaintiff's physical capabilities and need for special accommodations. (Tr. 788-92).  In determining Plaintiff's RFC, the ALJ gave "limited weight" to these opinions.  Plaintiff challenges the ALJ's decision on the ground that the ALJ did not provide adequate reasons for discounting the doctor's findings.

It is well-established that an ALJ must give special attention to the findings of the claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, often referred to as the "treating source rule" is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2).  The treating source rule indicates that opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Wilson*, 378 F.3d at 544.  When a treating source's opinion is not entitled to controlling weight, the ALJ must determine how much weight to assign to the opinion by applying factors set forth in the governing regulations. 20 C.F.R. §§ 416.927(c)(1)-(6), 404.1527(c)(1)-(6).  The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions that are sufficiently specific to make clear to any subsequent reviewers the

weight given to the treating physician's opinions and the reasons for that weight. *See Wilson*, 378

F.3d at 544 (*quoting* S.S.R. 96-2p, 1996 WL 374188, at *5).

In attributing "little weight" to Dr. Brabender's recommendations, the ALJ explained his

reasoning as follows:

> The assessment of Dr. Brabender, including the claimant's functional limitations and
> need for special accommodations, are not supported by objective medical evidence and
> are inconsistent with the evidence of record as a whole.  Additionally, the claimant
> testified that she can sit through a one-hour church service and that being in a car for
> more than an hour might be problematic, which is contrary to Dr. Brabender's opinion
> that the claimant cannot sit for more than one half hour.  Dr. Brabender's RFC statement
> notes that the claimant sees a psychiatrist, yet she has gone a year without doing so.

(Tr. 22-23).  While the ALJ determined that Dr. Brabender's opinions were not entitled to

controlling weight because they were not supported by objective medical evidence and were

inconsistent with the record as a whole, the ALJ's explanation does not go on to provide what

would appear to be "good reasons" for the weight attributed as required by 20 C.F.R. §§ 416.927

and 404.1527.  To begin, Dr. Brabender's reference to Plaintiff's psychiatric treatment was not a

sufficient reason to discredit the doctor's opinions.  In his report, Dr. Brabender indicated that he

would not opine as to Plaintiff's mental limitations because Plaintiff was seeing a "psychiatrist."

The ALJ was technically correct in asserting that Pence was not seeing a psychiatrist when Dr.

Brabender completed his report.   However, Pence attended some form of mental health

counseling at the Nord Center in the months leading up to Dr. Brabender's report. (Tr. 796, 798-

99).  While Plaintiff treated primarily with a professional counselor, rather than a psychiatrist,

this distinction was not a reasonable ground for the ALJ to question Dr. Brabender's opinion of

Plaintiff's limitations.

Turning to the ALJ's other reason for discounting Dr. Brabender, the ALJ addressed a

discrepancy between Plaintiff's ability to sit as demonstrated by her activities and Dr.

Brabender's finding as to the same. The ALJ correctly observed that Pence testified being able to sit throughout an hour-long church service or car ride, whereas Dr. Brabender found she could sit continuously for only thirty minutes. (Tr. 74-75). Plaintiff disputes the ALJ's use of her daily activities as grounds to undermine Dr. Brabender's opinion. The undersigned will not belabor whether the ALJ reasonably considered Plaintiff's daily activities in discounting her treating source's opinion.[5] Even if appropriate, the undersigned finds that one variance relating to Plaintiff's ability to sit continuously, on its own, is not sufficient to carry the ALJ's decision to devalue the treating physician.

Though the ALJ may not have complied with the letter of the reasons giving requirement, remand is not warranted. If an ALJ does not give good reasons for rejecting the opinion of a treating source, reversal and remand may not be required if the violation is *de minimis*. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 462 (6th Cir. 2005) (*citing Wilson*, 378 F.3d at 547). A *de minimis* violation occurs "where the Commissioner has met the goal of 20 C.F.R. § 404.1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id.* (*quoting Wilson*, 378 F.3d at 547). An ALJ may meet the goal of the good reasons requirement if he indirectly attacks the supportability of the treating physician's opinions and the consistency of those opinions with other record evidence. *See Nelson v. Comm'r of Soc.*, 195 F. App'x 462, 470 (6th Cir. 2006) (per curiam). In *Nelson*, the court found that the ALJ's analysis of the record evidence contrary to the treating physicians'

---

[5] Under certain circumstances, courts have found it appropriate for the ALJ to consider a claimant's daily activities in discounting a treating source's opinion. *See Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011); *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 342 (6th Cir. 2008); *see also Cole v. Astrue*, 661 F.3d 931, 938-39 (6th Cir. 2011) (the ALJ's findings as to activities of daily living were inadequate to discount the treating source, because the ALJ's recitation of the plaintiff's daily activities was inaccurate); *Gayheart v. Commissioner of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013) (ALJ's description of claimant's social and daily living activities insufficient to undermine treating psychologist's opinion because those activities did not suggest Plaintiff could function socially on a sustained basis and were taken out of context or offset by other examples in the record).

opinions adequately addressed the treating physicians' opinions by indirectly attacking their supportability and their consistency. *Id.* Thus, the "ALJ implicitly provided sufficient reasons for not giving those opinions controlling weight, and indeed for giving them little or no weight overall." *Id.* at 472; *see also Friend v. Comm'r Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("[T]he procedural rule is not a procrustean bed, requiring an arbitrary conformity at all times.").

The Court finds that this is such a case where the ALJ adequately addressed the treating physician's opinions though an indirect attack, and thus provided an understanding of the reasons for the weight given to the treating source. The ALJ did not summarily dismiss Dr. Brabender's opinions, but rather provided a detailed examination of the doctor's report as well as other evidence in the record, which brought forth inconsistencies between Dr. Brabender's conclusions and those of other physicians.

For example, when formulating Plaintiff's RFC, the ALJ indirectly supported his conclusion by highlighting some of the discrepancies among Dr. Brabender's ultimate opinion and the findings of treating specialists like Dr. Gupta. *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Unlike Dr. Brabender, whom the ALJ acknowledged is a primary care physician, Dr. Gupta specialized in spinal care. The specialist's treatment records do not support the significant limitations that Dr. Brabender imposed. The ALJ noted that on July 14, 2008, Plaintiff explained to Dr. Gupta that she had low back pain for the past three years, but admitted that the pain was intermittent—lasting for three weeks, then disappearing for six months— contrary to a disabling condition as provided by Dr. Brabender's limitations. (Tr. 21, 646). The ALJ reviewed Dr. Gupta's July 2010 physical examination, which showed a range of motion that

14

was preserved in the spine and negative straight leg raises. (Tr. 22, 718). These unremarkable findings were recorded less than a year before Dr. Brabender's April 2011 assessment, and absent any evidence of a significant change in health, they call into question Dr. Brabender's substantial functional limitations. The ALJ further observed that Dr. Gupta administered conservative care in the form of a facet joint block for Plaintiff's alleged disabling spinal problems. Additionally, the ALJ correctly asserted that Plaintiff had not undergone any significant physical therapy, undermining the disabling nature of her condition.

Plaintiff's reliance on Dr. Gupta's medical records is unavailing. Though Plaintiff maintains that Dr. Gupta's records regularly reflected her difficulty sitting, standing, using her arms, and walking due to spinal disorders (Pl. brief at 14), these notations in Dr. Gupta's records were simply the doctor recording Plaintiff's subjective complaints, and as a result, they do not serve as objective medical evidence bolstering Dr. Brabender's limitations. (*See, e.g.*, 385, 386, 718). Dr. Gupta diagnosed various spinal disorders, but Plaintiff has not identified where Dr. Gupta restricted her ability to sit, stand, or lift. It is well established that the mere diagnosis of a condition does not speak to its severity or indicate the functional limitations caused by the ailment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1001 (6th Cir. 2011) ("To support a finding of disability, the impairment must result in functional limitations."). Plaintiff also cites to Dr. Gupta's June 30, 2009 report as evidence that the doctor found MRI results consistent with her back and leg pain, but Dr. Gupta does not make such a finding in his report. (Tr. 494).

In a further indirect attack on Dr. Brabender's opinion, the ALJ discussed the conclusions of state agency reviewing consultants Drs. Hinzman and Graham. After assessing Plaintiff's medical evidence, both consultants found that Plaintiff could perform light work with restrictions

15

involving stairs and ramps; ladders, ropes, and scaffolds; and occasional reaching overhead.  The ALJ reasonably relied on the state agency doctors' opinions and his reliance on these reviewers is discussed more thoroughly later in this opinion.

The ALJ also described medical records from Dr. Mahajan, plaintiff's neurologist, which do not support a finding of disability.  While discussing Dr. Mahajan's January 2011 treatment records, the ALJ recounted the doctor's relatively unremarkable physical exam: though Plaintiff showed some decreased sensation in her extremities, Plaintiff's gait and reflexes were normal. (Tr. 22).  Given that the ALJ's discussion of opinion evidence from Dr. Gupta, two state agency examiners, and Dr. Mahajan provides an adequate understanding of the ALJ's decision to give limited weight to Dr. Brabender's extreme limitations, any error in relation to the ALJ's treating source analysis is harmless.

Finally, Plaintiff alleges that the ALJ erred by failing to discuss the factors set out in 20 C.F.R. § 404.1529 in determining the weight to give Dr. Brabender's opinion and in assessing her credibility.  However, Plaintiff's argument is not well-taken.  To begin, the factors set forth in 20 C.F.R. § 404.1529 apply to the ALJ's analysis of a claimant's credibility and subjective complaints of pain, not the analysis of a treating source, to which the factors set out in 20 C.F.R. §§ 416.927 and 404.1527 are relevant.  Furthermore, the text of the regulations guiding the ALJ's review of a claimant's credibility and treating source opinions only requires the ALJ to "consider" the factors set forth when making his decision. 20 C.F.R. §§ 404.1529, 404.1527.  It is well established that an ALJ is under no obligation to mention every piece of evidence presented to him to show that such evidence was considered. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) (per curiam) (*quoting Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).  Plaintiff has not identified, and the Court is

unaware of, any binding case law demanding an ALJ to specify how he analyzed each of these factors individually. While including a thorough assessment of each factor might be helpful in assisting a claimant to better understand the ALJ's decision, a factor-by-factor analysis is not required so long as the ALJ's opinion clearly conveys why the opinion was credited or rejected. See *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). Accordingly, Plaintiff's first assignment of error regarding her treating physician does not present a basis for remand.

### B. State Agency Consultants

Next, Plaintiff argues that, for a number of reasons, the ALJ erred in granting great weight to the opinions of Drs. Hinzman and Graham. To begin, Plaintiff maintains that it was improper for the ALJ to rely on these opinions because neither doctor examined Plaintiff or heard her testimony during the administrative hearing. Yet, Plaintiff's argument is contrary to the agency regulations, which provide that, "administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled." 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009). Furthermore, the regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are "highly qualified" and are "experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Thus, it was not inappropriate for the ALJ to accord significant weight to the opinions of Drs. Hinzman and Graham, even though the doctors did not personally examine Plaintiff, question her, or attend the administrative hearing.

17

Pence's next allegation challenges the scope of the state agency doctors' reviews. Because Drs. Hinzman and Graham did not have access to evidence that arose after they had completed their reviews, including Dr. Brabender's treating source statement, Plaintiff argues that it was error for the ALJ to accord their opinions significant weight. In determining Pence's residual functional capacity ("RFC"), the ALJ gave "limited weight" to Plaintiff's treating source and instead placed more reliance on the opinions of Drs. Hinzman and Graham to whom the ALJ attributed "great weight." The ALJ agreed with the state agency doctors that Plaintiff could perform light work, with some added restrictions.

Granting greater weight to the state agency doctors' opinions is not, on its own, error mandating reversal. Social Security Ruling 96-6p explains that "[i]n appropriate circumstances, the opinions from State agency medical . . . consultants may be entitled to greater weight than the opinions of treating or examining sources." S.S.R. 96-6p, 1996 WL 374180, at *3. For example, the ruling provides that this may occur when "the State agency medical . . . consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source." _Id._ In _Blakley v. Comm'r_, 581 F.3d 399, 409 (6th Cir. 2009), the Sixth Circuit held that the ALJ's choice to attribute greater weight to state agency consultants over the plaintiff's treating sources was reversible error because the consultants' opinions were based on an incomplete case record. The Sixth Circuit remanded the case because the court "require[d] some indication that the ALJ at least considered [the subsequent medical records] before giving greater weight to an opinion that is not 'based on a review of a complete case record.' " _Id._ (_quoting Fisk v. Astrue_, 253, F. App'x 580, 585 (6th Cir. 2007)); _Brooks v. Soc. Sec. Admin._, 430 F. App'x 468, 482 (6th Cir. 2011) (ALJ might have relied on a state consultant's dated assessment "if the ALJ made clear

that he had considered the effect of the subsequent medical records on the reliability of that assessment.").

Following *Blakley*, the Sixth Circuit indicated that the example set forth in the ruling "does not exhaust the range of 'appropriate circumstances' under which a non-treating source's opinion may be entitled to greater weight than that of a treating source. There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.' " *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (internal citations omitted).  In *McGrew v. Comm'r*, 343 F. App'x 26, 30-32 (6th Cir. 2009) the Sixth Circuit found an ALJ's reliance on state agency medical opinions' based on an incomplete record was not in error, because the ALJ considered medical examinations after the state assessments and accounted for changes in the plaintiff's condition in the RFC.

While Plaintiff's argument calls forth the proposition set out in *Blakely*, the case is distinguishable in light of its facts.  In *Blakely*, the ALJ failed to comply with the treating source rule in analyzing the opinions of three treating physicians, including ignoring one treating source's opinion altogether. *Blakley*, 581 F.3d at 407-08.  Here, the ALJ's opinion adequately explained why he attributed less than controlling weight to Dr. Brabender's opinions when deciding Pence's RFC.  An ALJ's unsupported rejection of a treating source and reliance on non-examining sources without full access to the record appeared to be the "overriding danger" that existed in *Blakely*, is not similarly present here. *See Curry v. Colvin*, 4:13-CV-00312, 2013 WL 5774028, at *17 (N.D. Ohio Oct. 24, 2013).

Additionally, the ALJ gave some explanation for crediting the opinions of Drs. Hinzman and Graham.  The ALJ afforded each great weight because they were "generally consistent with

the evidence of record." (Tr. 23).  The ALJ's statement implied a recognition that the state agency opinions were not in significant conflict with medical evidence that arose after their assessments and retained reliability.

Furthermore, the ALJ's opinion demonstrates his consideration of the relevant medical records relating to Pence's physical health following the state consultants' opinions.  The ALJ discussed Plaintiff's treatment with Dr. Gupta in July 2010, Plaintiff's two hospitalizations which related, in part, to Xanax abuse (Tr. 752-62), Plaintiff's treatment with Dr. Mahajan (Tr. 819-22), and Dr. Brabender's findings from 2011. (Tr. 728, 826-30).  Though the ALJ does not directly discuss every examination record from Dr. Brabender post-dating the state agency reviews, the ALJ describes in detail Dr. Brabender's February 2011 progress note and treating source statement, which summarizes much of the relevant objective findings from Plaintiff's prior treatments. (Tr. 728, 826-30).   Similarly, the ALJ's failure to describe what appear to be two treatment notes from Dr. Gupta in 2010 does not put into question the ALJ's reliance on the state agency doctors. (Tr. 720, 737).  Though Plaintiff complained of pain during these sessions, Dr. Gupta found that her strength and range of motion was relatively well preserved and medication and other conservative treatment were helpful, which supported the findings of the state consultants.   Given that the ALJ separately considered the relevant medical records pertaining to Plaintiff's physical condition that post-dated Drs. Hinzman and Graham's opinions when deciding to afford them great weight, the ALJ sufficiently fulfilled his duties.[6]

---

[6] Defendant argues that Dr. Holbrook's review of the record in June 2010 and subsequent finding that Plaintiff's RFC remained unchanged obviates any error on the part of the ALJ in relying on Drs. Hinzman and Graham.  However, the ALJ did not mention Dr. Holbrook in his opinion.  The undersigned's review of the ALJ's decision is limited to consideration of the reasoning supplied by the ALJ; it is improper for the Court to affirm the ALJ's decision based upon post hoc rationalizations submitted by the Commissioner.  *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009).

Significantly, the ultimate responsibility for determining a claimant's RFC is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ had the responsibility of determining Plaintiff's RFC and considered the opinions of both treating and non-examining sources. In this case, the ALJ's opinion provided an adequate analysis for assigning less than controlling weight to the opinions of Plaintiff's treating source, while making it sufficiently clear why he placed greater reliance on state agency doctors.

Plaintiff's remaining allegations regarding the ALJ's reliance on the state agency consultants' opinions lack merit. According to Plaintiff, it is unclear whether Dr. Hinzman conducted a review of the medical record, or instead, based his opinion on the phone call summary and medical review completed by Mary Koeninger, who does not identify herself as a medical expert. Beyond this bare allegation, Plaintiff cites to no evidence indicating that Dr. Hinzman failed to conduct an independent review. The Court declines to assume that the state agency expert failed to fulfill his duties without more evidence. As a result, Plaintiff's argument that the ALJ erred in relying on Dr. Hinzman fails in this regard.

Plaintiff also seems to imply that it was improper for the ALJ to rely on Dr. Graham's evaluation, because the doctor cited to a functioning report from May 15, 2009. (Tr. 265, 535). She maintains that the functioning report does not support a finding that she can sit, stand, walk, or lift as required for light work. Contrary to Plaintiff's assertions, an examination of Dr. Graham's opinion does not show that he based his entire opinion on the functioning report. The doctor described various medical records in his analysis, and as a result, the undersigned concludes it was not improper for the ALJ to rely on Dr. Graham based on this allegation.

Finally, Plaintiff relies on *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) for the proposition that the opinion of a non-examining physician is entitled to little weight if it is

21

contrary to the opinion of a treating physician.  Plaintiff's characterization of *Shelman* requires some further clarification.  In *Shelman* the Sixth Circuit began by explaining that an ALJ is not bound by the finding of a claimant's treating source when the opinion lacks sufficient support from medical data.  *Id.* at 320-21.  However, the court went on observe that the ALJ failed to make a finding that the plaintiff's treating sources were unsupported by objective medical evidence.  *Id.* at 321.  Because the ALJ did not explain why the treating sources were rejected, the Sixth Circuit found it unreasonable for the ALJ to credit a non-examining physician's opinion over that of a treating source.  *Id.*; *see Gholston v. Comm'r Soc. Sec.*, No. 5:11-CV-1482, 2012 WL 4092811, at *7 (N.D. Ohio Sept. 17, 2012) (*citing Brumett v. Comm'r of Soc. Sec.*, No. 1:07-CV-955, 2009 WL 690250, at *8 (S.D. Ohio Mar. 11, 2009)).  Here, unlike in *Shelman*, the ALJ made a finding that Dr. Brabender's opinion was not entitled to controlling weight and his opinion adequately met the goal of the treating source doctrine.  Thus, the ALJ reasonably accorded greater weight to the opinions of Plaintiff's state agency reviewers.

### C.  Claimant's Credibility

During her discussion of the ALJ's treating source analysis, Plaintiff briefly challenges the ALJ's credibility finding.  Alleging that the ALJ pointed to nothing specific in the record that deters from her description of the intensity, persistence, and limiting effects of her symptoms, Pence concludes that the ALJ's credibility determination was flawed.  Generally, "[a]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the] ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).  Notwithstanding, the ALJ's credibility finding must be supported by substantial evidence, *Walters*, 127 F.3d at 531, as the

ALJ is "not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.' " *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (*quoting* S.S.R. 96-7p, 1996 WL 374186, at *4).

The Sixth Circuit follows a two-step process in the evaluation of a claimant's subjective complaints of disabling pain. 20 C.F.R. §§ 404.1529, 416.929; *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994). First, the ALJ must determine whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce the claimant's symptoms. *Rogers*, 486 F.3d at 247. Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence and limiting effects of the symptoms on the claimant's ability to work. *Id.* The ALJ should consider the following factors in evaluating the claimant's symptoms: the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve the pain; measures used by the claimant to relieve the symptoms; and statements from the claimant and the claimant's treating and examining physicians. *Id.*; *see Felisky*, 35 F.3d at 1039-40; S.S.R. 96-7p.

To this end, substantial evidence supports the ALJ's credibility determination. Taking into account Plaintiff's testimony, the record evidence, and applicable factors for evaluating credibility, the ALJ concluded that Plaintiff's medically determinable impairments could cause her alleged symptoms, but her statements as to the intensity and limiting effects of her symptoms were not entirely credible. (Tr. 21). The decision includes reasons in support of this adverse credibility finding. The ALJ recounted that both Drs. Hinzman and Graham found Plaintiff only partially credible as to the effects of her condition on her functional limitations. (Tr. 23, 451,

535).  Although Plaintiff complained of being limited by her back condition, the ALJ noted her admission to Dr. Gupta that her back pain stays for approximately three weeks and then will disappear. (Tr. 23, 646).   In addition, despite Plaintiff's complaints of disabling neck pain, the ALJ explained that she had not undergone any significant physical therapy. (Tr. 22). Accordingly, the ALJ's opinion provided reasonable explanations for questioning Pence's credibility and was supported by substantial evidence in the record.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: January 24, 2014.


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1).   Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).